# ATTACHMENT K

Apr-23-03   07:08am   From-Temple Sales                     936 828 ....    9368291947   002/008   F-301

# TEMPLE-INLAND
### FOREST PRODUCTS CORPORATION

**PARTICLEBOARD**

## MATERIAL SAFETY DATA SHEET

VP04760  4/27/01

## SECTION I - PRODUCT IDENTIFICATION

**PRODUCT NAME:** Particleboard
**TRADE NAME:** TemStock, Underlayment, Shelving
**SYNONYMS:** N/A
**CHEMICAL FAMILY:** N/A
**CHEMICAL FORMULA:** N/A
**CAS NUMBER:** None
**MANUFACTURER'S NAME AND ADDRESS:**
    Temple-Inland Forest Products Corporation
    P.O. Drawer N
    Diboll, Texas 75941
    Contact: Don Cox, Manager Chemical Control & Health Programs
**EMERGENCY TELEPHONE NUMBER:** 409-829-5511
**DATE PREPARED OR REVISED:** April 1997

## SECTION II - HAZARDOUS INGREDIENTS

| COMPONENT | CAS # | EXPOSURE LIMIT (OSHA)* | EXPOSURE LIMIT (ACGIH)* |
|---|---|---|---|
| Formaldehyde | 50-00-0 | 0.75 ppm 8-hr TWA 2 ppm 15-min STEL | 0.3 ppm Ceiling |
| Wood Dust | None | 5 mg/m3 8-hr TWA 10 mg/m3 15-min STEL | 5 mg/m3 8-hr TWA 10 mg/m3 15-min STEL |

In AFL-CIO v. OSHA 965 F. 2d 962 (11th Cir. 1992), the court overturned OSHA's 1989 Air Contaminants Rule, including the specific PELs for wood dust that OSHA had established at that time. The 1989 PELs were: TWA-5.0 mg/m³; STEL (15 min.)- 10.0 mg/m³ (all soft and hard woods, except Western red cedar); Western red cedar: TWA - 2.5 mg/m³.

Wood dust is now officially regulated as an organic dust under the Particulates Not Otherwise Regulated (PNOR) or inert or Nuisance Dust categories at PELs noted under Section II of this MSDS. However, a number of states have incorporated provisions of the 1989 standard in their state plans. Additionally, OSHA has announced that it may cite companies under the OSH Act General Duty Clause under appropriate circumstances for noncompliance with the 1989 PELs.

*NOTE: Although Agency and Court decision(s) could affect these values, the Company will continue to utilize these values as the PEL.

## SECTION III - PHYSICAL PROPERTIES
### DESCRIPTION

Composite panel product composed of resin and wood particles of varying percents (dependent on properties and thickness) pressed into panels of various sizes (normally 4 ft. X 8 ft.) and third party certified for emission of formaldehyde at levels less than 0.3 ppm (large chamber method). The HUD standard.

### PHYSICAL DATA

**BOILING POINT** - Not Applicable
**SPECIFIC GRAVITY** - Variable (Dependent on wood species and moisture content)
**VAPOR DENSITY** - Not Applicable
**% VOLATILES BY VOLUME** - Not Applicable

Page 1 of 3

Apr-23-03   07:08am   From-Temple Sales                    630 828 ,...,        9366291947.003/008  F-301

# MATERIAL SAFETY DATA SHEET

**MELTING POINT** - Not Applicable
**VAPOR PRESSURE** - Not Applicable
**SOLUBILITY IN H20 (% BY WT.)** - Insoluble
**EVAPORATION RATE** (Butyl Acetate = 1) - Not Applicable
**pH** - Not Applicable
**APPEARANCE AND ODOR** - Light to dark colored granular solid. Color and odor are dependent on the wood species and time since board was manufactured.

## SECTION IV - FIRE AND EXPLOSION DATA

**FLASH POINT** - Not Applicable
**AUTO IGNITION TEMPERATURE** - 425 - 475 deg F
**FLAMMABLE LIMITS** - Formaldehyde LEL 7%, UEL 73%
**FIRE EXTINGUISHING MEDIA** - Water Spray, Carbon Dioxide
**SPECIAL FIRE FIGHTING PROCEDURES** - Fire fighting procedures for wood products are well known.

**UNUSUAL FIRE AND EXPLOSION HAZARDS** - Particleboard does not present a fire or explosion hazard. Sawing, sanding, or machining particleboard could result in the creation of wood dust. Wood dust may present a strong to sever explosion hazard if a dust cloud contacts an ignition source. According to data contained in NFPA Standards, .04 ounce per cubic foot is the minimum explosive concentration for wood flour.

## SECTION V - HEALTH HAZARD DATA

**Wood Dust/Fiber:** May cause nasal dryness, irritation and obstruction. Coughing, wheezing, and sneezing sinusitis and prolonged colds have also been reported. Depending on species, may cause respiratory sensitization and/or irritation. IARC classifies wood dust as a carcinogen to humans (Group 1). This classification is based primarily on IARC's evaluation of increased risk in the occurrence of adenocarcinomas of the nasal cavities and paranasal sinuses associated with exposure to wood dust. IARC did not find sufficient evidence to associate cancers of the oropharynx, hypopharynx, lung, lymphatic and hematopoietic systems, stomach, colon or rectum with exposure to wood dust.

**Signs and Symptoms of Exposure: Acute** - may cause temporary irritation of skin, eyes, or respiratory system. If irritation persists consult a physician. **Chronic** - rats exposed to 14 ppm formaldehyde developed nasal cancer. The NCI epidemiology study of 26,000 workers found little, if any, evidence linking formaldehyde exposure to cancer. The EPA has classified formaldehyde a B-1 Probable Human Carcinogen. Formaldehyde is listed by the IARC and the NTP as an animal carcinogen.

### EMERGENCY FIRST AID PROCEDURES

Inhalation, Eyes, Skin - Remove to fresh air
Ingestion - N/A

## SECTION VI - REACTIVITY DATA

**STABILITY** - Stable
**CONDITIONS TO AVOID** - High relative humidity and high temperature increases the rate of formaldehyde emissions in particleboard.
**INCOMPATIBILITY (materials to avoid)** - Strong oxidizing agents, strong acids
**HAZARDOUS DECOMPOSITION PRODUCTS** - Thermal and/or thermal-oxidative decomposition can product irritating and potentially toxic fumes and gases, including CO, aldehydes and organic acids.
**HAZARDOUS POLYMERIZATION** - Will not occur

## SECTION VII - SPECIAL PRECAUTION PROCEDURES

**PRECAUTIONS AND SAFE HANDLING:** Provide adequate ventilation to reduce the possible build-up of formaldehyde vapors.
**STEPS TO BE TAKEN IF SPILLED OR RELEASED:** See above.
**WASTE DISPOSAL METHOD:** Incinerate or landfill in accordance with local, state, and federal regulations.

# MATERIAL SAFETY DATA SHEET

## SECTION VIII - SPECIAL PROTECTION INFORMATION
### RESPIRATORY PROTECTION

Not required. However, the wearing of NIOSH approved breathing protection for exposure to wood dust may be necessary.
Respirators are required if air contaminants exceed OSHA PEL.

### VENTILATION

Local Exhaust: Necessary to remove dust in sanding, sawing and machine processes.
Mechanical: Ventilate to assure formaldehyde concentration is less than the OSHA PEL.

### EYE PROTECTION

Wear appropriate eye protection or safety goggles if wood dust exposure is likely.

## SECTION IX - REGULATORY INFORMATION

H.U.D.: The HUD regulation of 24 CFR Part 3280 provides for third party certification of particleboard manufactured with urea-formaldehyde resin for formaldehyde emissions. Maximum level is 0.3 ppm (large chamber test method). Temple-Inland particleboard, subject of this MSDS is certified to meet this H.U.D. standard.

CALIFORNIA PROPOSITION 65 - Safe Drinking Water and Toxic Enforcement Act: Title 22 California Code of Regulations California Proposition 65 provides for labeling and disclosure of the presence of a chemical(s) known to the State of California to cause cancer or reproductive toxicity. This product contains Formaldehyde in extremely low levels and may, depending on conditions, emit Formaldehyde. Based on a preponderance of data and the recognition by OSHA that 0.75 ppm TWA is a safe employee exposure level, we do not feel that exposure to this product presents significant risk to users.

SARA 313 - This product does not contain chemical(s) in concentrations which should require reporting under SARA 313.

ODS: During the manufacture of this product there is no intended use of listed ozone depleting chemicals as defined in applicable EPA regulations.

IMPORTANT: Temple-Inland Forest Products Corporation believe the information contained in this MSDS to be accurate at the time of preparation and has been compiled using sources believed to be reliable. However, Temple-Inland Forest Products Corporation makes no warrant, either expressed or implied concerning the accuracy or completeness of the information presented. It is the responsibility of the user to comply with local, state, or federal regulations concerning use of this product. It is the further responsibility of the buyer to research and understand safe methods of use, storage, handling and disposal of this product.

TemStock and Temple-Inland are trademarks of Temple-Inland Forest Products Corporation.

Abr-23-03   07:10am   From-Temple Sales                        838 829 ....        9365291947 .006/008   P-801

**TEMPLE-INLAND FOREST PRODUCTS CORPORATION**
**P. O. DRAWER N**
**DIBOLL, TEXAS**
**(409) 829-5511**

**WOOD DUST**
(For all Untreated Wood and Untreated Wood Products)
**CAUTION!**

**SAWING, SANDING OR MACHINING WOOD PRODUCTS CAN
PRODUCE WOOD DUST WHICH CAN CAUSE A FLAMMABLE OR
EXPLOSIVE HAZARD.**

**WOOD DUST MAY CAUSE LUNG, UPPER RESPIRATORY TRACT, EYE
AND SKIN IRRITATION. SOME WOOD SPECIES MAY CAUSE
DERMATITIS AND/OR ALLERGIC RESPIRATORY EFFECTS. THE
INTERNATIONAL AGENCY FOR RESEARCH ON CANCER (IARC) HAS
CLASSIFIED WOOD DUST AS A NASAL CARCINOGEN IN HUMANS.**

**\*FIRST AID:** If inhaled, remove to fresh air. In case of contact, flush eyes
and skin with water. If irritation persists, call a physician.

For additional information, see the Material Safety Data Sheet

NOTE: Size of label is not restricted by regulations. Must be legible.

Revised: July 19, 1995

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KENNY HILL,
                    PLAINTIFF

                                        Civil Action No. 05-160

v.
                                        Judge McLaughlin
                                        Magistrate Judge Baxter

JOHN LAMANNA, ET AL.,
                    DEFENDANTS

DECLARATION OF DEBORA FORSYTH, ASSOCIATE WARDEN

1.    I am the Associate Warden (AW) over Industries and Education
      (I&E) at the Federal Correctional Institution (FCI), Jessup,
      Georgia.  Prior to this, from May 9, 1999, until
      approximately June 3, 2003,  I was the Superintendent of
      Industries (SOI) at FCI McKean, Pennsylvania.

2.    As the SOI at FCI McKean, my responsibilities included both
      oversight of the day-to-day operations and long term policy
      decisions affecting the Federal Prison Industries, Inc. (FPI
      or trade name UNICOR) operation at FCI McKean.

3.    I am aware that inmate Kenny Hill, Register Number 17110-
      016, has filed the above-captioned civil action in the
      United States District Court for the Western District of
      Pennsylvania, naming me as a defendant in both my official
      and personal capacities.  Inmate Hill alleges, among other

things, that he was exposed to hazardous air-borne
particulates at his inmate work assignment in the UNICOR
factory at FCI McKean, and that he was not issued proper
safety equipment.

7.  To the best of my recollection, inmate Hill did not report
    any work-related injuries or illnesses to me, nor did he
    request any special safety equipment that he could use at
    his inmate work assignment.

8.  To the best of my knowledge and recollection, inmates
    assigned to work assignments in the UNICOR factory at FCI
    McKean were required to wear hearing protection and goggles.
    Dust masks and gloves were available to inmates upon request
    from their work supervisors.  If an inmate were to request
    special safety equipment to use during his work assignment,
    arrangements would be made through the Safety Department to
    furnish the appropriate equipment.  Inmate Hill never
    requested a dust mask or a respirator to use at his inmate
    work assignment.

9.  Under no circumstances would I ever alter any Material
    Safety Data Sheet (MSDS) in the UNICOR factory, nor would I
    direct any person in the institution (be they staff or

-2-

inmate) to alter the MSDS sheets in the UNICOR factory.

I declare under penalty of perjury in accordance with the provisions of 28 U.S.C. § 1746 that the above is accurate to the best of my knowledge and belief.

Deborah Forsyth
Associate Warden
FCI Jessup

1-30-0e
Date

-3-