IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KENNY HILL,
        PLAINTIFF

v.

JOHN LAMANNA, ET AL.,
        DEFENDANTS

Civil Action No. 05-160E

Judge McLaughlin
Magistrate Judge Baxter

Electronically Filed

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT, OR IN THE ALTERNATIVE,
FOR SUMMARY JUDGMENT**

The Federal Defendants, by their attorneys, Mary Beth Buchanan, United States Attorney for the Western District of Pennsylvania, Albert W. Schollaert, Assistant U.S. Attorney, and Douglas S. Goldring, Assistant General Counsel for Federal Prison Industries, Inc., now file this Reply Brief in support of their previously filed Motion to Dismiss or for Summary Judgment pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56.

**A.**    **Plaintiff's Complaint Still Fails to Establish an Eighth Amendment Violation**

Plaintiff's primary opposition the Defendants' Motion is his unsupported contention that he has experienced many of the symptoms related to "overexposure to the materials in his complaint." Plaintiff's Opposition, p. 1. These symptoms include: nasal dryness, irritation and obstruction of nasal passages, irritation of the skin, dermatitis, coughing, and dry or irritated eyes. Id. Although, it is true, that these symptoms are listed on the MSDS sheets for wood fiber, Micore Board and Locweld, Plaintiff has produced no evidence to show that these symptoms were in any way caused by exposure to these materials. In fact, all of the symptoms mentioned by Plaintiff are also the exact symptoms commonly associated with a common cold, viral infection, or even seasonal or environmental allergies.[1]

---

[1] In fact, in August 2004, when he was transferred from FCI McKean to FCI Petersburg, Plaintiff's medical records indicated that he does suffered from environmental allergies. See Declaration of Douglas S. Goldring ¶ 5, and Attachment D.

Additionally, when he was transferred from FCI McKean to FCI Petersburg, Plaintiff's sole medical complaint was "jock itch". See Declaration of Douglas S. Goldring ¶ 5, and Attachment D. Jock itch is completely unrelated to any of the symptoms noted in Plaintiff's complaint, and to his work assignment in the UNICOR factory (in fact, this condition appears to predate Plaintiff assignment to UNICOR.) Therefore, it is clear that, to the extent Plaintiff experienced any of the symptoms noted in his complaint, there is no evidence beyond mere coincidence, linking them to his work assignment in UNICOR. More likely, his symptoms were caused by the environmental allergies noted in his medical records.

Plaintiff further alleges, without providing any evidence, that had he been given a NIOSH-approved respirator, that he would have experienced none of the medical conditions listed in his Complaint. This is simply not true. In fact, it is clear from the MSDS sheets that such a respirator was not required for the work performed by Plaintiff in the UNICOR factory.

First, it is relevant to note that, at all times relevant to this complaint, Defendants were in complete compliance with all applicable OSHA regulations. Defendants' compliance with OSHA standards clearly insulates them from liability. See Helling v. McKinney, 509 U.S. 25 (1993); Wooten v. Goord, 2004 WL 816919 (W.D.N.Y., Mar. 25, 2004), aff'd., 2005 WL 387971 (2nd Cir., Feb 17, 2005); Saahir v. Holligan, 2004 WL 1418790 (N.D. Tex., June 24, 2004); Baker v. Williams, 2002 WL 31015630 (D.Del., Sept. 10, 2002); Jones v. Kearney, 2001 WL 1414854 (D.Del., Nov. 2, 2001).[2]

Furthermore, even assuming, arguendo, that Defendants' compliance with OSHA standards is not enough, Defendants evaluated, and complied with, the Material Safety Data Sheets (MSDS) for substances utilized in the UNICOR factory. MSDS sheets are required to, and do, list risks associated with overexposure to various chemicals. More importantly,

---

[2] Plaintiff attempts to refute Defendants' compliance with OSHA Regulations by alleging, with no additional evidentiary support, that Defendants altered the operation of the UNICOR factory when OSHA came to inspect the air quality. Plaintiff cannot be allowed to use these baseless and unsupported allegations to continue the otherwise unsupportable allegations in his Complaint.

however, the MSDS sheets set forth what precautions, if any, must be taken in order to protect against such risks. See Declaration of Stephen Housler ¶ 33. Defendants' decisions regarding the UNICOR work environment and protective equipment were consistent with the MSDS sheets and with product warning labels.[3] See Exhibit 2 ¶¶ 32-38, and Attachment C, E, I, and J.

The product warning label for Micore Board states: "Dust hazard. Cut and trim with knife, razor, or hand saw. Do not cut with power equipment unless a dust collector is used on the equipment or local exhaust is used and a NIOSH/MSHA-approved respirator is worn." See Declaration of Stephen Housler ¶ 38, and Attachment J. Defendants do not dispute that power equipment was used to cut Micore Board. However, in accordance with the Micore 300 label, the UNICOR factory employed a dust collector on the cutting equipment. See Declaration of Stephen Housler ¶ 36; Declaration of Martin Sapko ¶¶ 7-10, and Attachments C-E. Because the UNICOR factory used a dust-collector system instead of local exhaust, a NIOSH/MSHA-approved mask was not required. See Declaration of Stephen Housler ¶¶ 34-38, and Attachments I-J.

---

[3] Additionally, Plaintiff continues to assert that Defendants altered the MSDS sheet. Although Defendants do not deny that an MSDS sheet was apparently altered, Plaintiff has provided no evidence that any of the Defendants intentionally altered the MSDS sheet, or that Plaintiff was actually harmed by the alleged alteration to the MSDS sheet. Specifically, Plaintiff was not provided with a respirator because: a) it was determined that a respirator was not required, and b) he never requested one. See Declaration of Martin Sapko ¶ 12; Declaration of Stephen Housler ¶¶ 32-46; Declaration of Debora Forsyth ¶ 8. An unauthorized marking or alteration which was allegedly made on the MSDS sheet, and never noticed by any staff member at the time, played no part in this calculus. See Declaration of Martin Sapko ¶ 12; Declaration of Stephen Housler ¶¶ 32-46; Declaration of Debora Forsyth ¶ 8. Finally, because copies of the MSDS sheets are readily available on the factory floor, any staff or inmate in the factory could place an unauthorized marking or alteration on an MSDS sheet. Such handwritten alterations to an MSDS sheet are not authorized by Defendant Housler or anyone else in the institution. See Declaration of Martin Sapko ¶ 13; Declaration of Stephen Housler ¶¶ 43-45; Declaration of Debora Forsyth ¶ 9. Nonetheless, if an alteration to the MSDS sheet had been brought to the attention of staff, it would have been replaced as soon as practicable. See Declaration of Martin Sapko ¶ 13; Declaration of Stephen Housler ¶¶ 43-45; Declaration of Debora Forsyth ¶ 9.

The MSDS for Micore Board also clearly established that NIOSH/MSHA-approved masks are <u>not</u> required when a dust collecting system is in use. See Declaration of Stephen Housler ¶¶ 32-35, and Attachment C, E, and I. Section VII of the MSDS for Micore Board provides:

> **Respiratory protection:** Not typically necessary under normal conditions of use. Provide general ventilation and local exhaust ventilation to meet TLV [(Threshold Limit Values)] requirements of individual ingredients and to control dusting conditions. Wear a NIOSH/MSHA-approved dust respirator in poorly ventilated areas, if TLV is exceeded, and/or when dusty conditions exist. Avoid prolonged and repeated breathing of dust.

See Declaration of Stephen Housler ¶ 32, and Attachment I.

Thus, according to the MSDS for Micore Board, there are three situations which would necessitate the use of respirators when working with Micore Board: (1) in poorly ventilated areas; (2) if Threshold Limit Values are exceeded; or (3) when dusty conditions exist. See Declaration of Stephen Housler ¶ 35, and Attachment I. The air quality tests performed by OSHA in the UNICOR factory definitively establish that the UNICOR factory was not poorly-ventilated, that the Threshold Limit Values for hazardous ingredients of Micore Board were not exceeded, and that dusty conditions did not exist. See Declaration of Stephen Housler ¶¶ 12-13, 18, and Attachments C and E. Indeed, the evidence shows that air quality tests conducted in 2001 and 2003, by Microbac Laboratories and by OSHA, respectively, revealed that the respiratory particulates were well below applicable OSHA limits. See Declaration of Stephen Housler ¶¶ 12-13, 18, and Attachments C and E.

It is also clear that the UNICOR factory at FCI McKean was more than adequately ventilated. Specifically, the factory is equipped with two dust collection systems, each consisting of large dust collectors, extensive duct work, fans, vacuums and a waste portal. The dust collectors have been operational in the FCI McKean UNICOR factory since approximately September 11, 1989, and each dust collector has the capacity to move 34,000 cubic feet of air per minute from the UNICOR factory. See Declaration of Martin Sapko ¶7, and Attachment C.

The dust collection system is connected to the furniture-manufacturing machinery in the UNICOR building. According to operational procedures in the UNICOR factory at FCI McKean, the manufacturing machinery is not to be operated unless the dust collection system is turned on first. See Declaration of Martin Sapko ¶¶8-10.

The "Special Precautions" section of the Micore Board MSDS provides further support for the determination that a respirator was not necessary. That section indicates that "[o]ver-exposure to dust can cause eye, skin, nose, throat or respiratory irritation... Do not cut with power equipment unless either a dust collector is used on the equipment or local exhaust is used and NIOSH/MSHA-approved respirator is worn." See Declaration of Stephen Housler ¶¶ 32-37, and Attachment I. This language is similar, but not the same as, the warning contained on the Micore Board product label. The use and placement of the words either and or in the MSDS indicates that at times when the Micore Board is cut with power equipment, the factory could implement one of two precautions: either use a dust collector system, or use local exhaust and NIOSH/MSHA-approved respirators. Defendants reasonably opted to employ a dust collector system. See Declaration of Stephen Housler ¶ 38, and Attachment J; Declaration of Martin Sapko ¶¶ 7-10, and Attachments C-E. The MSDS does not indicate that, where a dust collector is used on the equipment, NIOSH-approved respirators are also required. See Declaration of Stephen Housler¶¶ 32-37, and Attachment I. Defendants' interpretation of the applicable safety requirements for Micore Board is consistent with the findings of the OSHA inspectors, who recommended, but did not require, the use of NIOSH-approved respirators. See Declaration of Stephen Housler ¶ 18, and Attachment E.[4] Therefore, because there is no basis to support

---

[4] Plaintiff further alleges that these same allegations constituted a violation of the Fifth Amendment Substantive Due Process Clause. It is well settled that if a constitutional claim is covered by a specific constitutional provision, it must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process. See U.S. v. Lanier, 520 U.S. 259, 272 n.7 (1997). Any substantive due process claim raised by Plaintiff as a result of his alleged exposure to silica dust relates to a specific government behavior against which the Eighth Amendment explicitly protects. Helling v. McKinney, 509 U.S. 25 (1993). As such, Plaintiff cannot obtain relief pursuant to the Fifth Amendment Substantive Due Process Clause, and this

Plaintiff's Eighth Amendment claim, the Complaint must be Dismissed.

**B.      Plaintiff Fails to State An Equal Protection Claim**

To the extent Plaintiff alleges that his failure to be equipped with a respirator violated his Fifth Amendment right to Equal Protection, this claim continues to be completely meritless. Plaintiff does not assert that any of his fundamental rights have been violated, nor could he succeed in making such a showing. It is well settled that Plaintiff has no constitutional right to a particular work assignment, let alone a constitutional right to a respirator. Accordingly, no fundamental right is at stake for purposes of equal protection analysis.   See James v. Quinlan, 866 F.2d 627 (3d Cir.), cert. denied, 493 U.S. 870 (1989).   Similarly, prisoners as a group do not constitute a suspect class for purposes of equal protection analysis. Abdul-Akbar, 239 F.3d at 317 (citing Pryor v. Brennan, 914 F.2d 921, 923 (7th Cir. 1990)).  Because Plaintiff is not a member of a suspect class and no fundamental right is at stake, strict scrutiny is not the appropriate test.  The Court must evaluate his equal protection claim under rational basis review.

In order to bring a successful claim for a denial of equal protection when the plaintiff does not allege membership in a suspect class or substantial interference with a fundamental right, a plaintiff must show that he has been intentionally treated differently from others similarly situated to him and that there is no rational basis for the difference in treatment.  See, e.g. Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Little v. Terhune, 200 F. Supp.2d  445, 450 (D.N.J. 2002).

Assuming, arguendo, that two prisoners can be similarly situated for purposes of equal protection analysis, Plaintiff has failed to allege that he is similarly-situated to, or that he has been treated differently than, any other inmate in the UNICOR factory.  In fact, aside from simply mentioning the name of the Equal Protection Clause in his Complaint, Plaintiff fails to allege any facts or circumstances in the Complaint which could be construed as discriminatory in

---

claim must be dismissed with prejudice.

any way. Therefore, his equal protection claim must be dismissed for failure to state a claim upon which relief can be granted.

**C.    There Is No Basis Upon Which To Continue This Action Against Defendant LaManna**

Plaintiff alleges that Defendant LaManna is subject to personal liability, based solely upon the fact that he responded to Plaintiff's administrative remedies. It is well settled, however, that "notice of [a prisoner's] problems which [defendants] may have received through the grievance system ... [is] insufficient to make them personally liable." Johnson v. Million, 2003 WL 1194249 at *1 (6th Cir. (March 7, 2003); accord, Etheridge v. Evers, 326 F.Supp.2d 818, 823 (E.D.Mich. 2004)("Claims which are based simply on the denial of a grievance do not state a claim of constitutional dimension."). As such, Plaintiff has alleged no affirmative act or omission Defendant LaManna which would subject him to liability in this lawsuit. Bracey v. Grenoble, 494 F.2d 566 (3rd Cir. 1974). Therefore, Defendant LaManna must be dismissed from this action.

WHEREFORE, for the foregoing reasons, Defendants respectfully request that the Court grant Defendants' Motion to Dismiss Plaintiff's Amended Complaint, or in the Alternative, for Summary Judgment.

Respectfully Submitted,

MARY BETH BUCHANAN
United States Attorney

S/ Albert W. Schollaert
ALBERT W. SCHOLLAERT
Assistant United States Attorney
Western District of Pennsylvania
U.S. Post Office and Courthouse
700 Grant Street, Suite 4000
Pittsburgh, PA 15219

OF COUNSEL:
Douglas S. Goldring
Assistant General Counsel
Federal Prison Industries (UNICOR)
400 First Street, NW, 8th Floor
Washington, DC 20534